# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SAFA G. ALAMIR,
                        Appellant,

        v.

DEPARTMENT OF JUSTICE,
                    Agency.

DOCKET NUMBER
DE-0752-20-0003-I-1

DATE: September 18, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Alan Lescht, Esquire, and Katherine Lease, Esquire, Washington, D.C., for the appellant.

Lesley Sotolongo, Esquire, and Karey Hart, Esquire, Falls Church, Virginia, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which affirmed her removal based on a charge of absence without leave (AWOL) and a charge of failure to follow instructions. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to (1) clarify the credibility findings; (2) vacate the administrative judge's finding regarding specification 5 of the AWOL charge; and (3) clarify the findings regarding specification 4 of the failure to follow instructions charge, we AFFIRM the initial decision.

## BACKGROUND

The appellant was hired by the agency as a Supervisory Legal Administrative Specialist at the Phoenix Immigration Court, effective April 28, 2019. Initial Appeal File (IAF), Tab 8 at 49. On July 9, 2019, the appellant did not report to duty, and she never returned to duty thereafter. *See* IAF, Tab 7 at 28-35, 37-44. By a letter dated August 8, 2019, the agency proposed the appellant's removal based on a charge of AWOL with 13 specifications, based on her absences for the period from July 22, 2019, through August 8, 2019, and a charge of failure to follow instructions with four specifications. *Id.* at 37-44. The first three specifications of the failure to follow instructions charge related to the appellant's failure to respond to requests for documentation and information on July 15, 2019, July 25, 2019, and July 30, 2010, pertaining to her absence from work, and the fourth specification

related to her failure to return to duty on August 5, 2019, as instructed. *Id.* at 41. By a letter dated September 11, 2019, the deciding official sustained all 13 specifications of the AWOL charge and all four specifications of the failure to follow instructions charge, and sustained the appellant's removal, effective immediately. *Id.* at 28, 30-34.

The appellant timely filed an appeal of the agency's removal decision and requested a hearing. IAF, Tab 1. After the appellant subsequently withdrew her hearing request, *see* IAF, Tabs 36-37, the administrative judge issued an initial decision based on the written record sustaining both charges and the removal penalty, IAF, Tab 44, Initial Decision (ID) at 2, 19. Specifically, the administrative made the following findings: (1) she sustained all 13 specifications of the AWOL charge; (2) she sustained specifications one and three of the failure to follow instructions charge, relating to the instructions the appellant received on July 15, 2019 and July 30, 2019 requesting documentation and information about her absence; (3) she did not sustain specification 2 of the failure to follow instructions charge, relating to the July 25, 2019 instruction for the appellant to provide information regarding her absence; and (4) she concluded that the fourth specification of the failure to follow instructions charge, ordering the appellant on July 30, 2019, to return to duty by August 5, 2019, was based on the same facts underlying specifications 10 through 13 of the AWOL charge, and consequently, the specification merged with those specifications of AWOL. ID at 9-15. Because this specification merged with the AWOL specifications, the administrative judge concluded, the fourth specification of the failure to follow instructions charge was proven "by virtue of the agency's proof of AWOL," and therefore was also sustained. ID at 15. The administrative judge also concluded that the agency established a nexus for both charges, that the deciding official appropriately considered the factors identified in *Douglas v. Veterans Administration,* 5 M.S.P.R. 280, 306 (1981) in making her penalty determination,

and that the penalty of removal was within the bounds of reasonableness, so she sustained the removal penalty, affirming the agency removal action.  ID at 16-19.

The appellant has filed a petition for review of the initial decision.  Petition for Review (PFR) File, Tab 1.  The agency has filed a response in opposition to the petition for review, and the appellant has not filed a reply.  PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

On review, the appellant argues that the administrative judge erred by concluding that the agency's decision denying her request for leave without pay (LWOP) in lieu of AWOL was reasonable.  PFR File, Tab 1 at 11-14.  She also argues that the administrative judge erred by concluding that the agency met its burden of proving the three specifications of failure to follow instructions. *Id.* At 15-18.  Specifically, for the first specification, concerning the July 15, 2019 request for information and documentation related to her absences, the appellant restates her arguments that she did not receive the instruction, that the instruction was vague or unclear, and that the short deadline for compliance was unreasonable.  *Id.* at 15-16; *see* IAF, Tab 7 at 46.  Regarding specification 3, which concerned the appellant's failure to respond to four specific questions in a return to duty letter dated July 30, 2019, the appellant argues that the administrative judge ignored evidence that she complied with the instruction to the extent she could, based on the information and documentation she had at the time, and for the portions of the instruction she didn't comply with, she did not have information to provide beyond what she disclosed to her supervisor at the time, so she was unable to comply.  PFR File, Tab 1 at 16-18; *see* IAF, Tab 7 at 65-68.  Regarding specification 4 of the charge, the appellant argues that although the administrative judge merged this specification with the AWOL specifications for the period from August 5 through August 8, 2019, she nevertheless erroneously held that specification against the appellant by separately sustaining it.  PFR File, Tab 1 at 18.

Finally, the appellant argues that the administrative judge erred in sustaining the removal penalty. *Id.* at 18-23. She argues that the agency failed to adequately consider mitigating factors, including the fact that she was only absent from duty because she was involved in an emotionally tumultuous custody dispute, which the administrative judge dismissed as merely a "difficult situation." *Id.* at 20-21. She also asserts that the agency failed to properly weigh the nature and seriousness of the failure to follow charge, noting that the appellant was charged with missing "arbitrary deadline[s] for providing information," and asserts that the agency failed to consider the appellant's positive work history as mitigating, failed to consider her potential for rehabilitation, and failed to practice progressive discipline or consider alternative sanctions other than removal. *Id.* at 21-23.

<u>The administrative judge failed to make specific credibility findings, but we cure that error by making required credibility findings on the remaining contested factual issue.</u>

As a preliminary matter, we note that on petition for review, the appellant argues that the administrative judge "plainly ignored" evidence demonstrating that she provided information and documents to the extent she could, and cites excerpts from the appellant's deposition testimony. PFR File, Tab 1 at 16-17; *see id.* at 4-24 (citing IAF, Tab 39 at 42-85). In essence, the appellant is arguing that the administrative judge failed to make explicit credibility determinations. We agree, and we supplement the record by making the required credibility findings. In *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), the Board set forth the factors administrative judges should consider to resolve issues of credibility, including: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's

version of events; and (7) the witness's demeanor. *Id.* Because there was no hearing in this appeal, and therefore no direct or cross-examination, impeachment testimony, or other opportunities to observe witness demeanor, the administrative judge had limited credibility evidence to consider. Nevertheless, it remains incumbent upon the Board to resolve issues of credibility as they pertain to disputes of material fact, and it is possible to adapt the *Hillen* factors to the situation at hand. *See Goode v. Defense Logistics Agency*, 45 M.S.P.R. 671, 674 n.2 (1990) (finding that the principles of resolving credibility issues are properly applied in cases where there is no hearing); *Hillen*, 35 M.S.P.R. at 453. Where, as here, an administrative judge's findings are not based on the observation of witnesses' demeanor, the Board is free to re-weigh the evidence and substitute its own judgment on credibility issues. *Haebe v. Department of Justice*, 288 F.3d 1288, 1302 (Fed. Cir. 2002); *Hendricks v. Office of Personnel Management*, 109 M.S.P.R. 179, ¶ 8 (2008).

In addition to the documentary evidence in the record, the agency submitted sworn declarations from the proposing and deciding officials for the appellant's removal, and a supplementary declaration from the proposing official. IAF, Tab 38 at 29-47; Tab 40 at 11. Additionally, the appellant provided selected excerpts from her deposition testimony for this case. IAF, Tab 39 at 42-85; Tab 41 at 15-22. Based on our review of the entire record, including the provided declarations and selected deposition testimony, we conclude that the only issue the parties materially disagree on with respect to the provided testimonial evidence concerns whether the appellant and her supervisor had a phone conversation on or around July 11, 2019, during which the appellant states that she informed her supervisor that she had been detained, provided additional details regarding her ongoing custody dispute, and requested and received verbal approval for LWOP through September 15 or September 24, 2019. *See* IAF, Tab 38 at 30-33; Tab 39 at 10-11, 51-53; Tab 40 at 11; Tab 41 at 5, 20. While the appellant alleges that all of these topics were discussed during this purported

conversation, the appellant's supervisor denies any such conversation ever occurred. *Compare* IAF, Tab 39 at 51-53, *with* Tab 40 at 11. Accordingly, we limit our credibility findings to resolution of this factual dispute.

Of the *Hillen* factors identified above, the relevant factors where no hearing was held include: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; and (6) the inherent improbability of the witness's version of events. *Hillen*, 35 M.S.P.R. at 458. As an initial matter, we note that neither party produced phone record call logs, which may have been helpful for resolving whether the contested phone conversation occurred on or around July 11, 2019. Both the appellant and her supervisor would have been equally capable of observing any phone conversation that occurred, so that factor favors neither party. *Hillen*, 35 M.S.P.R. at 458.

Regarding witness bias, we first acknowledge that the Board has held that while witness bias is a factor in resolving credibility issues, the Board does not discount testimony merely because it is self-serving or the witness has an interest in the outcome. *Baldwin v. Department of Veterans Affairs*, 111 M.S.P.R. 586, ¶ 23 (2009); *see Bennett v. Department of the Air Force*, 84 M.S.P.R. 132, ¶¶ 10-11 (1999). Instead, self-serving testimony must be evaluated for credibility in the same manner as all other testimony presented by the parties. *Baldwin*, 111 M.S.P.R. 586, ¶ 23; *Hillen*, 35 M.S.P.R. at 458. Nevertheless, we conclude that the appellant stood to benefit by her assertion that the purported conversation occurred in the manner she described because it would undermine the agency's assertion that she failed to follow several of the instructions for which she was charged and would support her claim that she had been granted the requested LWOP. Conversely, there is no evidence to suggest that the appellant's supervisor exhibited any bias or motive to fabricate testimony based on his

provided declaration, so we conclude that this factor slightly favors the appellant's supervisor's denial that a phone conversation occurred in the manner described by the appellant.

With respect to any contradiction or consistency between each witness's version of events and other evidence in the record, although the appellant equivocally asserted that the phone call occurred "sometime around July 11," she was never able to specifically identify the date on which the conversation purportedly occurred.[2] IAF, Tab 39 at 51-52. The appellant's supervisor, by contrast, denied receiving a phone call from the appellant on July 11, 2019, and provided a detailed accounting of his text and phone conversations with the appellant during the period from July 9 through July 25, 2019. IAF, Tab 38 at 30-37. Additionally, although the appellant maintains that she provided answers to the questions contained in the July 30, 2019 return to duty letter during her July 11, 2019 conversation with her supervisor, the record clearly reflects that her supervisor continued to seek answers to several of the questions she purportedly answered (including whether not she had been arrested) well after their July 11, 2019 conversation, undermining the appellant's assertion that the conversation occurred in the manner she described. *See* IAF, Tab 7 at 61, 65-68. Regarding the appellant's claim that she requested and received approval for LWOP for the period through September 15 or September 24, 2019, an email dated July 17, 2019, reflects that the appellant made a request for LWOP for the period from July 15 through July 19, 2019 only, and subsequently entered her request into WebTA (the agency's time and attendance program) on July 18, 2019. IAF, Tab 7 at 49-50; *see* IAF, Tab 38 at 70-73. It defies logic that the appellant would receive verbal approval for LWOP for a longer period of time, only to turn around

---

[2] With her petition for review, the appellant has provided a supplementary declaration reasserting that she told her supervisor that she was "detained when [she] refused to give up [her] son," and that she shared with her supervisor "all the information" she had regarding her "arrest and detainment," but she still fails to identify when and how she disclosed this information. PFR File, Tab 1 at 26.

and make a request in WebTA a week later for a shorter period of time than she states she was verbally granted. By contrast, in his sworn declaration, the appellant's supervisor unequivocally denies that the appellant ever informed him that she had been arrested or detained, and denies that he verbally approved any LWOP requested on any date. IAF, Tab 40 at 11. We conclude that this factor strongly favors the appellant's supervisor's assertion that the July 11, 2019 phone call did not occur in the manner described by the appellant.

Finally, regarding the inherent improbability of a witness's version of events, in his declaration, the appellant's supervisor noted that he transcribed his text messages and the events that occurred during the period from July 9 through July 15, 2019, and emailed a transcription of the events to himself on July 15, 2019, in order to preserve the record of his communications with the appellant. *See* IAF, Tab 38 at 61-62. Although the log of events includes a record of the phone call he received from the appellant on July 9, 2019, and from the appellant's mother on July 10, 2019, it does not have any record of a phone call from the appellant during the period from July 11 through July 15, 2019. IAF, Tab 38 at 30-32; *see id.* at 61-62. Given the supervisor's meticulous recordkeeping, we conclude that it is inherently improbable that any such call, if it had occurred, would not be reflected in the supervisor's record log. Accordingly, we conclude that this factor also favors a finding that the conversation did not occur in the manner described by the appellant. Consequently, we supplement the initial decision to find that the appellant's assertion that a phone call occurred on or around July 11, 2019, regarding the topics addressed above is less credible than her supervisor's denial that any such phone call occurred, and we do not credit her claim. *See Hillen*, 35 M.S.P.R. at 458.

<u>The agency proved specifications 1 through 4 and 6 through 13 of the AWOL charge.</u>

*We agree with the administrative judge's finding sustaining specifications 1 through 4 and 6 through 13 of the AWOL charge.*

As the administrative judge correctly noted, to prove a charge of AWOL the agency must show that the appellant was absent from duty on the dates in question and that her absences were not authorized or that a request for leave was properly denied. *Boscoe v. Department of Agriculture*, 54 M.S.P.R. 315, 325 (1992); *see* ID at 9. Additionally, while it is well settled that the decision to grant LWOP is within an agency's discretion, where disciplinary action results because LWOP is denied and the employee is placed on AWOL, the Board will review the circumstances to determine if the denial was reasonable. *Joyner v. Department of the Navy*, 57 M.S.P.R. 154, 159 (1993); *see Sambrano v. Department of Defense*, 116 M.S.P.R. 449, ¶ 4 (2011).

In the initial decision, the administrative judge concluded that there was no dispute that the appellant was absent from duty during the period from July 22, 2019, through August 8, 2019 (encompassing specifications 1 through 13), and that her absences were not authorized. *See* ID at 9-12. The administrative judge also considered the appellant's argument that the agency's decision denying her request for LWOP in lieu of AWOL was unreasonable, but concluded that the agency permissibly denied her LWOP request. *See* ID at 10-12. Specifically, the administrative judge noted that despite the appellant's assertion that the agency was required to grant her LWOP request due to her obligations related to her custody dispute, the Board has held that agencies are not obligated to grant LWOP requests in comparable circumstances. *See* ID at 11 (citing *Hawkins v. Department of Navy*, 49 M.S.P.R. 501, 505 (1991)). Alternatively, the administrative judge considered the appellant's argument that confidentiality laws or other reasons prevented her from providing information to justify her LWOP request, but determined that nothing in the record supported this assertion, noting that the appellant had, in fact, provided some information

regarding her custody dispute to the agency, and that obligating the agency to approve the appellant's absences based on her court or child custody obligations would unduly burden the agency by forcing other employees to take on the appellant's workload without a foreseeable end. *See* ID at 11-12.

On review, the appellant restates her argument raised below that the agency's decision denying her request for LWOP was unreasonable, citing the initial decision *Cromwell v. Social Security Administration*, MSPB Docket No. AT-0752-06-0406-I-1, Initial Decision at 6 (July 7, 2016), to support her assertion. PFR File, Tab 1 at 12-13. With respect to the specifications identified above, we find no error in the administrative judge's determination and find no reason to disturb it on review. As an initial matter, *Cromwell* is an initial decision, and therefore is not binding precedent on the Board. Additionally, the decision is distinguishable on its facts. The appellant in that case was summoned to appear before the court on threat of criminal contempt or arrest, and the administrative judge only declined to sustain one day of AWOL—the day of the appellant's actual hearing—and sustained the remaining 8 days of AWOL charged. *Cromwell*, MSPB Docket No. AT-0752-06-0406-I-1, Initial Decision at 6 (July 7, 2016). Here, aside from a hearing scheduled for August 7, 2019 (encompassing the period identified in specification 12), the appellant has not alleged that she had a hearing on any other date.[3]

We also agree with the administrative judge's conclusion that the agency's decision denying her request for LWOP in lieu of AWOL was not unreasonable. ID at 9-10. In finding that the agency permissibly denied the appellant's LWOP request, the administrative judge properly examined the record as a whole to determine whether the denial of LWOP was reasonable under the circumstances. *See Joyner v. Department of the Navy*, 57 M.S.P.R. 154, 159 (1993); ID at 9-12. She credited the agency's assertion that the appellant's lengthy unauthorized

---

[3] In the appellant's deposition testimony, she acknowledged that the hearing scheduled for August 7, 2019, was ultimately canceled. *See* IAF, Tab 39 at 61.

absences created a significant burden on the agency by requiring her workload to be handled by other Supervisory Legal Administrative Specialists and the rest of the management team, and concluded that the appellant's repeated unwillingness to commit to a date by which she would return established that there was no foreseeable end in sight to her absences. *See* ID at 10-11. The administrative judge also determined that the appellant had not established that she was suffering from medical issues or incapacitation, or that her circumstances met any of the other exceptions to the general rule that the decision to deny a request for LWOP is within an agency's discretion. ID at 9-10; *see Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 29 (2015), *overruled in part on other grounds by Pridgen v. Office of Management and Budget*, 2022 MSPB 31; *Thomas v. Department of Army*, 23 M.S.P.R 483, 484 (1984). The appellant's mere disagreement with these findings does not, without more, establish a basis for review. *See Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1988) (observing that mere reargument of factual issues already raised and properly resolved by the administrative judge below does not establish a basis for review). We find, therefore, that she has not shown that the administrative judge erred in sustaining specifications 1 through 4 and 6 through 13 of the charge of AWOL.

> *We vacate the administrative judge's finding sustaining specification*
> *5 of the AWOL charge, but we still sustain the charge.*

Although not raised on review, we take this opportunity to address the administrative judge's finding with respect to specification 5 of the AWOL charge, which alleged that the appellant was absent without leave on July 26, 2019. *See* IAF, Tab 7 at 40; ID at 9. In the initial decision, the administrative judge concluded that the agency met its burden of proving this specification of the charge. ID at 9, 12. However, in the agency's close of record brief it withdrew this specification from consideration. IAF, Tab 38 at 4. The Board is required to review the agency's decision on an adverse action solely on the

grounds invoked by the agency; the Board may not substitute what it considers to be a more adequate or proper basis. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 7 (2016). Consequently, we conclude that the administrative judge erred when she sustained specification 5 of the charge of AWOL despite the agency's decision to withdraw that specification from consideration, and we vacate the administrative judge's finding sustaining that specification. *See* ID at 9, 12. Nevertheless, the Board has regularly held that "proof of one or more, but not all, of the supporting specifications [of a charge] is sufficient to sustain the charge." *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990); *Greenough v. Department of the Army*, 73 M.S.P.R. 648, 657 (1997). For the reasons previously discussed, we ultimately agree with the administrative judge's conclusion that the agency proved the remaining 12 specifications of the AWOL charge, and thus, proved the charge as a whole.

The agency proved the charge of failure to follow instructions.[4]

*The administrative judge correctly concluded that the agency proved specification 1 of the failure to follow instructions charge.*

On review, the appellant also challenges the administrative judge's findings concerning the specifications of the failure to follow instructions charge. PFR File, Tab 1 at 15-18. Specification 1 of the charge alleged that the appellant failed to respond to a July 15, 2019 request from her first-line supervisor for documentation to support her ongoing absences by noon the following day. IAF, Tab 7 at 41, 46.

In the initial decision, the administrative judge determined that the agency proved the charge by showing that the instruction was "an understandable directive (provide information by noon on July 16)," and that the appellant failed to follow that directive. *See* ID at 12. Regarding the appellant's argument that the directive set an "arbitrary deadline" that she later met, the administrative

---

[4] Neither party has challenged the administrative judge's decision not to sustain specification 2 of the failure to follow instructions charge, so we have not addressed it here. *See* ID at 13.

judge determined that there was nothing objectively unreasonable about the timeframe set by the agency and that nothing prohibited the agency from imposing an arbitrary deadline to respond, so the appellant's argument was without merit. ID at 12-13. The administrative judge consequently sustained the specification. ID at 13.

On review, the appellant restates her argument raised below that the agency's request for "some type of documentation" was vague or unclear, and that the appellant's supervisor never specified what sort of documentation he needed from the appellant. PFR File, Tab 1 at 15. The appellant also reasserts that she never received the email message conveying the instruction because it was sent to her government email address, that she does not recall when she received the text message reproducing the instruction, and that she provided the information as soon as she practicably could, on the morning of July 17, 2019. *Id.* at 15. In the response she ultimately provided, the appellant asserts that she provided the information she had and that her supervisor appeared satisfied with her response, and so the specification should not be sustained. *Id.* at 15-16.

Regarding the dispute concerning whether and when the appellant received the instruction, the record reflects that at 5:15 P.M. on the evening of July 15, 2019, the appellant's first-line supervisor sent an email to the appellant's government email address informing her that he had been told that he needed "some type of documentation" from her regarding her absence, and stated that it would be helpful if he knew "a little bit more about what you are going through." IAF, Tab 38 at 79; *see id.* at 32. The message requested that the appellant "[p]lease respond to this email by noon tomorrow." *Id.* at 79. The supervisor also averred that after sending the email, he sent the appellant a text message alerting her to the fact that he had sent an email to her government email address, and requested that she respond to his email. *Id.* at 32; *see id.* at 80. The supervisor declared that in response to his text message, the appellant sent him a text stating that she did not have access to "go to mail," (presumably referring to

her government email), and that she didn't have a link to log on to WebTA. *See id.* at 32, 80. The supervisor stated that he responded to the appellant's text message by copying the message he sent to her government email address into a text message and sent it to her that same evening. *Id.* at 33, 80.

On the morning of Wednesday, July 17, 2019, the appellant's supervisor sent an email to the appellant's personal email address stating that he had not received any documentation from the appellant by the noon, July 16th deadline. *Id.* at 82-83. At 7:43 a.m. that day, the appellant responded by email stating that she had a family emergency, and provided some additional details regarding her absence, including that she was out of the state due to an ongoing custody dispute over her son involving the father of her child, but she did not provide any documentation at that time. *Id.* at 82. In an email response, the appellant's supervisor thanked her for the email and requested that as soon as she got any documentation, she email it to him. *Id.*

Based on our review of the entire record, we agree with the administrative judge's conclusion that the agency proved this specification of the charge. As the administrative judge correctly noted, an agency may prove a charge of failure to follow instructions by establishing that (1) the employee was given a proper instruction and (2) the employee failed to follow the instructions, without regard to whether the failure was intentional or unintentional. *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 16 (2014); *Hamilton v U.S. Postal Service*, 71 M.S.P.R. 547, 555 (1996); *see* ID at 12. Here, although the appellant indicates that she does not recall when she received the instruction, she does not directly dispute her supervisor's assertion that he sent the instruction to her government email on the evening of July 15, 2019, and that he reproduced the instruction in a

text message that he sent to the appellant that same evening.[5] IAF, Tab 38 at 32-33.

Additionally, although the appellant asserts that the instruction was vague or unclear and that she was unsure about what sort of documentation she was expected to provide, she does not dispute the fact that she failed to provide any response whatsoever—even an incomplete response lacking any sort of documentation—until the morning of July 17, 2019, well after the deadline established by the agency for a response. PFR File, Tab 1 at 15-16; *see Pedeleose v. Department of Defense*, 110 M.S.P.R. 508, ¶¶ 16, 18, *aff'd*, 343 F. App'x 605 (Fed. Cir. 2009) (concluding that even when an employee may have substantial reason to believe that an order is improper, absent unusual circumstances (such as when obedience would cause her irreparable harm or place her in a clearly dangerous situation), an employee must first comply with the instruction and then, if she disagrees with it, register her complaint or grievance later); *Larson v. Department of the Army*, 91 M.S.P.R. 511, ¶ 21 (2002). Further, as the agency correctly observed below, any potential vagueness in the supervisor's instruction was due to the fact that the appellant had provided inadequate explanations for the reason for her absences up to that point, so it was unclear to her supervisor whether the appellant or one of her family members were sick, in which case she would have needed to produce supporting medical documentation to support her absences. *See* IAF, Tab 38 at 31 ("I believed the Appellant was sick [as of July 11, 2019]"; "At this point [on July 14, 2019], I thought either the Appellant or her son was gravely ill, possibly with a diagnosis such as cancer.").

---

[5] The conclusion that the supervisor did, in fact, send the instruction to the appellant's government email address and by text message, is bolstered by the fact that in his subsequent email on the morning of July 17, 2019, noting that the appellant had failed to follow his instruction, the appellant's supervisor referred to the "last text/email" he had sent to the appellant requesting documentation for her absences by noon the previous day, indicating that he had sent the instruction both by text and by email on July 15, 2019. *See* IAF, Tab 1 at 28-29 (emphasis added).

Finally, we similarly find no merit to the appellant's argument that the timeline the agency set for her to respond to the instruction was unreasonable. PFR File, Tab 1 at 15-16. As the administrative judge noted, there was nothing inherently unreasonable about the deadline set by the appellant's supervisor, particularly given that the appellant and her supervisor had been in regular contact when he sent her the instruction, and he had previously sent several similar messages asking for information and updates from the appellant about her status and about why she had been absent from work for the previous 4 days, which the appellant had, up to that point, failed to satisfactorily answer. *See* IAF, Tab 38 at 31-32, 61-62. Accordingly, we conclude that the administrative judge properly sustained specification 1 of the failure to follow instructions charge.

> *The administrative judge correctly concluded that the agency proved specification 3 of the charge.*

Specification 3 of the charge alleged that the appellant failed to follow her supervisor's instruction on July 30, 2019, directing her to provide information that supported her absences dating back to July 9, 2019, and instructing her to provide answers to each of the following questions: (1) whether she was arrested in connection with her extended absence, and if she was arrested, what she was arrested for; (2) when her scheduled court dates were, and the reasons for each court date; (3) a firm date by which she intended to return to duty; and (4) an explanation for why she failed to return to duty at the Phoenix immigration court as of that date. IAF, Tab 7 at 41, 65-68. In the initial decision, the administrative judge concluded that the agency met its burden of proving this specification of the charge. ID at 14-15. Specifically, the administrative judge considered the appellant's assertion that she had provided "numerous emails and documents" establishing the basis for her ongoing court case and the reason she had to remain in California, but concluded that the only relevant communication was the one on August 5, 2019. ID at 14. Reviewing the August 5, 2019 communication, the administrative judge determined that it was not fully

responsive to the agency's questions, noting that the appellant failed to address whether she had been arrested, failed to explain the reasons for three upcoming court dates, and failed to provide an explanation for why she had not reported to duty. ID at 14. The administrative judge determined that, although the appellant had provided some information that was responsive to the agency's questions (that is, the fact that she had upcoming court dates and scheduled visitations with her child), when balanced against the portions of the instruction the appellant failed to follow, the agency met its burden of proving as much of the specification as was necessary to prove the charge. ID at 14-15 (citing *Otero v U.S. Postal Service*, 73 M.S.P.R. 198, 204 (1997)).

On review, the appellant argues that the administrative judge ignored the fact that she had provided the information requested in the July 30, 2019 letter to the extent that she was able to, based on the information and documentation she had at the time. PFR File, Tab 1 at 16. Specifically, the appellant states that she provided documentation regarding the reasons for her pending court dates and the fact that they pertained to her custody dispute, as well as an explanation that she could not return to duty due to her legal obligations related to her custody dispute. PFR File, Tab 1 at 16. Regarding the information concerning her arrest, the appellant states that she did not have any information about her arrest at the time the agency requested it beyond the information she states she previously disclosed to her supervisor about being detained. *Id.* at 17; *see* IAF, Tab 39 at 52. The appellant also states that she has new and material evidence regarding her arrest in the form of a notice she received on June 22, 2020 informing her that the arraignment for her July 2019 arrest was scheduled for September 2020, and she provides a copy of this notice. PFR File, Tab 1 at 17, 26-32. She asserts that this June 22, 2020 notice was the first time she became aware of the specific reason she was arrested on July 9, 2019, and that if she had had this document when she received the July 30, 2019 instruction, she would have provided it. *Id.* at 17. She argues that because she provided all of the information that she had at the time,

the administrative judge erred in sustaining specification 3 of the failure to follow instructions charge and the charge should be reversed. *Id.* at 17-18.

As an initial matter, we agree with the administrative judge's finding that the only communication from the appellant relevant to this specification is her email on August 5, 2019, responding to the July 30, 2019 return to duty letter issued by her supervisor. ID at 14; *see* IAF, Tab 7 at 73-78. As the administrative judge noted, the fact that the appellant's supervisor continued to pose the four questions identified in the July 30, 2019 return to duty letter made clear that he found any previous responses from the appellant on these subjects insufficient. *See* ID at 14. Reviewing the appellant's August 5, 2019 email, she identifies the fact that she had a previous court date scheduled for July 11, 2019, that was postponed until July 15, 2019, and that she had upcoming hearings scheduled for August 7, 2019, August 15, 2019, and September 4, 2019. IAF, Tab 7 at 73. She also arguably provides an explanation as to why she had been absent for at least a portion of the previous 4 weeks, noting that she had frequent court-ordered visits, classes, and meetings with her counselor related to her custody dispute. *Id.* Finally, she provides a copy of a notice for the July 12, 2019 scheduled custody hearing, and a weekly visitation schedule with her child. *Id.* at 75-76. Nevertheless, the appellant's August 5, 2019 reply does not provide any response to the following questions: (1) whether she had been arrested in connection with her extended absences; (2) what she had been arrested for; (3) the reasons for some of her court dates; and (4) a firm date by which she intended to return to duty. *See* IAF, Tab 7 at 67.

Although the appellant continues to assert that she did not become aware of what she was arrested for until she received the summons on June 22, 2020, she has never disputed the fact that she was aware of the *fact* that she was arrested, when she was arrested and held overnight on July 9, 2019.[6] *See* IAF, Tab 39

---

[6] As the appellant's supervisor identified in his declaration, this instruction was particularly important since agency policy requires supervisors to instruct employees who are arrested to self-report their arrests to the agency's security office, which the

at 57. Further, the appellant has not disputed that at the time she provided her August 5, 2019 response, she was aware of the fact that her hearing scheduled for August 7, 2019, was related to her arrest. *See* IAF, 39 at 61. An agency is required to prove only the essence of its charge, and the Board will examine the structure and language of the proposal and decision, as well as the accompanying specifications and circumstances. *See Cole v. Department of the Air Force*, 120 M.S.P.R. 640, ¶ 8 (2014); *George v. Department of the Army*, 104 M.S.P.R. 596, ¶ 7 (2007), *aff'd*, 263 F. App'x 889 (Fed. Cir. 2008). The July 30, 2019 return to duty letter specifically required the appellant to provide a response to each of the four questions identified above, which she failed to do. *See* IAF, Tab 7 at 67. Consequently, we agree with the administrative judge's conclusion that the agency met its burden of proving that the appellant failed to follow the instruction contained in the July 30, 2019 return to duty letter, and we sustain specification 3 of the charge.[7]

> *Because specification 4 of the failure to follow instructions charge merged into specifications 10 through 13 of the AWOL charge, the administrative judge erred by separately sustaining specification 4 of the failure to follow instructions charge.*

On review, the appellant also argues that, despite merging specification 4 of the failure to follow instructions charge into specifications 10 through 13 of

---

appellant's supervisor told her attorney in a July 23, 2019 email. *See* IAF, Tab 7 at 54-55; Tab 40 at 11.

[7] With respect to the June 22, 2020 letter scheduling the arraignment for the appellant's July 9, 2019 arrest and the copy of the online docket information for her criminal case that the appellant provides for the first time on review, we have not considered this information. *See* PFR File, Tab 1 at 27-31. The Board will not consider evidence submitted for the first time with a petition for review absent a showing that it is both new and material. *Okello v. Office of Personnel Management*, 112 M.S.P.R. 563, ¶ 10 (2009); *see* 5 C.F.R. § 1201.115(d). Although the arraignment letter and the online docket information are dated after the date the initial decision was issued, and therefore are "new," because they have no bearing on the issue whether the appellant was aware of the *fact* that she was arrested at the time she responded to the July 30, 2019 email, they do not change the outcome of this case, and so they are not material. Consequently, we have not considered either document.

the AWOL charge, the administrative judge still held that specification of the failure to follow instructions charge against her by sustaining it "separate and apart from" the AWOL charge. PFR File, Tab 1 at 18. We agree. In the initial decision, the administrative judge concluded that the July 30, 2019 instruction ordering the appellant to return to duty was "based on the same facts that underlie" AWOL specifications 10 through 13, and as a result, they merged. ID at 15 (citing *Jones v. Department of Justice*, 98 M.S.P.R. 86, ¶ 16 (2004)). As a consequence, the administrative judge reasoned, specification 4 of the failure to follow instructions charge was also "proven by virtue of the agency's proof of AWOL," and she sustained that specification of the failure to follow instructions charge. ID at 15 (citing *Mann v. Department of Health & Human Services*, 78 M.S.P.R. 1, 6 (1998)).

However, the Board has held that where two charges are based on the same incident and involve the same misconduct, they "merge into a single charge." *Bross v. Department of Commerce*, 94 M.S.P.R. 662, 664 n.1 (2003), *aff'd*, 389 F.3d 1212 (Fed. Cir. 2004). Although it is true that the practical consequence of merging duplicative charges into a single charge is that the facts that underlie both charges are proven, the Board has also held that it "need not consider [the un-merged charge] further," except to say that it is proven. *Powell v. U.S. Postal Service*, 122 M.S.P.R. 60, ¶ 10 (2014); *Jones v. Department of Justice*, 98 M.S.P.R. 86, ¶ 16 (2004); *see Westmoreland v. Department of Veterans Affairs*, 83 M.S.P.R. 625, ¶ 6 (1999) (merging charges of failure to follow leave-requesting procedures into the charge of AWOL when the charge of AWOL was based solely on the appellant's failure to follow the leave requesting procedures), *aff'd*, 19 F. App'x 868 (Fed. Cir. 2001), *overruled on other grounds as recognized in Pickett v. Department of Agriculture*, 116 M.S.P.R. 439, ¶ 11 (2011). Consequently, it was unnecessary for the administrative judge to separately sustain specification 4 of the failure to follow instructions charge, and we vacate her finding in that regard. In any event, because we agree with the

administrative judge's conclusion that the agency met its burden of proving specifications 1 and 3 of the failure to follow instructions charge, we conclude that the agency has met its burden of proving the failure to follow instructions charge as a whole. *See Burroughs*, 918 F.2d at 172; *Greenough*, 73 M.S.P.R. at 657.

<u>The administrative judge correctly concluded that the penalty of removal was reasonable.</u>

Finally, on review the appellant argues that the administrative judge erred in sustaining the removal penalty. PFR File, Tab 1 at 18-23. Specifically, she asserts that the agency did not consider mitigating factors, including the fact that she was only absent from duty because she was involved in an emotionally tumultuous custody dispute, and that the administrative judge improperly weighed this factor by dismissing the appellant's circumstance as merely a "difficult situation." *Id.* at 20-21. The appellant also argues that the agency failed to properly consider the nature and seriousness of the failure to follow instructions charge, noting that she was charged with missing "arbitrary deadline[s]." *Id.* at 21. She also argues that the agency failed to consider her positive work history as mitigating, failed to consider her potential for rehabilitation, and failed to practice progressive discipline or consider alternative sanctions other than removal. *Id.* at 21-23.

When, as here, the Board sustains the agency's charges, but not all of the specifications of those charges, it will review the agency-imposed penalty to determine whether it is within the parameters of reasonableness. *Dunn v. Department of the Air Force*, 96 M.S.P.R. 166, ¶ 10 (2004). The Board's function is not to displace management's responsibility or to decide what penalty it would impose, but to assure that management's judgment has been properly exercised and that the penalty selected by the agency does not exceed the maximum limits of reasonableness. *Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 20 (2001); *Douglas*, 5 M.S.P.R. at 306. Thus, the Board will

modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeds the bounds of reasonableness. *Stuhlmacher*, 89 M.S.P.R. 272, ¶ 20.

Here, despite the appellant's assertion otherwise, the record clearly reflects that the deciding official considered all of the relevant *Douglas* factors in reaching her decision to sustain the removal action. IAF, Tab 7 at 33-34; *see generally Douglas*, 5 M.S.P.R. at 305-06 (providing a nonexhaustive list of factors that are relevant to determine the appropriate penalty). As the administrative judge noted, in her penalty determination, the deciding official considered as mitigating factors that the appellant had previously carried out her duties professionally prior to her extended period of AWOL, that she had no record of prior discipline with the agency, that she was experiencing "personal issues" with regard to her custody dispute, that she accepted a degree of responsibility for her misconduct, and the appellant's 11 years of total service. IAF, Tab 7 at 33; *see* ID at 18.

Despite these mitigating factors, the deciding official concluded that those factors were outweighed by the fact that the appellant had accrued significant AWOL and failed to follow instructions related to those absences, which were serious offenses, that the appellant was a supervisor and was held to a higher standard, that her long-term and unpredictable absence had an adverse impact on the agency's ability to carry out its mission, that given the severity of the appellant's misconduct, there was no potential for rehabilitation, and that no alternative penalty other than removal was appropriate. IAF, Tab 7 at 33-34; *see Bowman v. Small Business Administration*, 122 M.S.P.R. 217, 12 (2015) (finding that the appellant's absence without leave and failure to follow leave requesting procedures were serious offenses and his status as a supervisor was significant to the penalty determination because, as a supervisor, he was held to a higher standard); *Maddux v. Department of the Air Force*, 68 M.S.P.R. 644, 645-46 (1995) (upholding the appellant's removal for 21 consecutive calendar

days of AWOL, despite 20 years of Federal service); *Hawkins v. Department of the Navy*, 49 M.S.P.R. 501, 503, 507 (1991) (finding that the penalty of removal was reasonable for 16 days of AWOL for an appellant with no prior discipline and 6 years of service); *Young v. U.S. Postal Service*, 14 M.S.P.R. 549, 551 (1983) (upholding the appellant's removal for 40.75 hours of AWOL over an approximately 6-week period, despite 17 years of Federal service). Additionally, in her sworn declaration, the deciding official restated these findings, and emphasized that she still would have determined that removal was the appropriate penalty based on 12 specifications (108 hours) of AWOL alone. IAF, Tab 38 at 46. Accordingly, we agree with the administrative judge's conclusion that the agency appropriately considered the relevant *Douglas* factors, and that the penalty of removal is reasonable.[8] For the foregoing reasons, we affirm the initial decision sustaining the agency removal action, as modified by this final order.

## NOTICE OF APPEAL RIGHTS[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate

---

[8] We note that the administrative judge incorrectly implied that a charge "must" be sustained where "some, but not all, specifications supporting a charge are sustained." ID at 15 (citing *Greenough v. Department of the Army*, 73 M.S.P.R. 648, 657 (1997)). Nevertheless, the administrative judge also correctly quoted the decision from the U.S. Court of Appeals for the Federal Circuit in *Burroughs v. Department of the Army*, 918 F.2d at 170, making clear that "[w]here more than one event or factual specification is set out to support a single charge, proof of one or more, but not all, of the supporting specifications *is sufficient to* sustain the charge." ID at 15 (emphasis added). Because we ultimately agree with the administrative judge's finding that the agency's chosen penalty was reasonable, this misstatement was harmless and did not affect the outcome of the decision in any way. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that was not prejudicial to a party's substantive rights provided no basis for reversal of an initial decision).

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10] The court of appeals must <u>receive</u> your petition for

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of

review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    *Gina K. Grippando*
                            _____
                            Gina K. Grippando
                            Clerk of the Board

Washington, D.C.